ALEXANDRE and others *vs.* THE SUN MUTUAL INSURANCE
COMPANY.

Where the temporary repairs are made upon a vessel in a foreign port, by the
insured, for the sole benefit of the insurers, and by their express consent and
authority, to enable the vessel to be navigated to the port of destination, for
the purpose of there making permanent repairs at less cost, the insurers must
bear the whole expense of the temporary as well as the permanent repairs,
although the amount, in the aggregate, exceeds the sum named in the policy.

THE defendants insured the plaintiffs, in the sum of $8000,
upon eight-tenths of their brig, E. F. Newton, after-
wards called the Antonio Mathe, against marine risks, in the
usual form ; the brig being valued at $10,000. The follow-
ing statement of facts was agreed on as correct by the coun-
sel for both parties, viz : The brig left Belize, Honduras,
for New York, with a cargo of logwood, &c. ; ran on a reef ;
was got off too much damaged to pursue her voyage without
repairs ; went back to Belize, unloaded, was surveyed, was
found to be so much injured that it was impossible perma-
nently to repair her at Belize ; forwarded her cargo by another
vessel. After the survey, the master wrote to the plaintiffs,
from Belize, stating the condition of affairs, and asking for
instructions. His letter was communicated to the defend-
ants, who requested the plaintiffs to instruct him. They did
so, in the following letter :

" Nov. 4th. Capt. GEO. MARSHALL, Brig Anto. Mathe :
Dear Sir, We have received your favor of the 7th ulto., and
observe what you say, and we very much regret to learn that
the damage to the brig Ant. Mathe is much more than you
had at first supposed.

We have consulted with the underwriters and they leave
the matter in our own hands. We, therefore, request you to
consult with our friend Anto. Mathe in all matters concern-
ing the brig.

We wish to put only such repairs as will be considered
*perfectly* safe to bring the brig to this port.

Per brig "Lucy Heywood," to sail in about ten days, we shall send you a foreyard and, as to the foresail, it appears to us that you will have had sufficient time to put it in good repair on board. We shall also try to send you such pump gear as you suggest.

In a word, whatever you and Mr. Mathe decide about the brig is approved beforehand, and, in hope to see you with her soon, we remain, dear sir, yours very truly,

F. ALEXANDRE & SON."

This letter, before being forwarded, was exhibited to the defendants, and they wrote at the foot thereof as follows :

"Office Sun Mutual Ins. Co., November 4th, 1864. We, as underwriters on the hull of brig Anto. Mathe, concur in the above.         E. R. ANTHONY, Vice President."

This letter and concurrence having been received by the master, the necessary temporary repairs were made at Belize, and the vessel came to New York. The cost of the temporary repairs at Belize was, together with the cost of exchange, the sum of $8769.74. In taking the brig back from the reef to Belize, unloading her there, taking care of her and her cargo there, and ascertaining the nature and extent of the damage sustained on the reef, and before it was concluded to send forward part of the cargo by another vessel, certain expenses were incurred, specified in the general average statement, the proportion of which applicable to the said brig was $581.18. When the vessel arrived in New York, she was repaired in full ; at an expense, after deducting one third, new for old of $4547.21.

The defendants have paid the sums mentioned in the answer, on account of the loss and interest, and have also paid the costs of this action accrued at the time of such other payment.

Preliminary proofs of loss and interest were served by the plaintiffs on the defendants, on the 20th of May, 1865.

Alexandre *v*. Sun Mutual Insurance Company.

The plaintiffs claimed as follows :

| | |
|---|---:|
| Vessel's portion, general average, . . . . | $581.18 |
| Temporary repairs, . . . . . . . . . | 8769.74 |
| Full repairs, . . . . . . . . . . . | 4547.21 |
| | $13,898.13 |
| Eigth tenths of which is . . . . . . | 11,118.51 |
| Received from defendants (besides costs,) | 8000.00 |
| | $3118.51 |
| Interest from June 20, 1865, . . . . . | 163.72 |
| | $3282.23 |

The defendants claimed that the $8000 paid would satisfy their liability under the policy.

It was impossible at the scene of disaster to ascertain the extent of the damage to the vessel.   Belize was the nearest port to which she could be taken for the purpose of ascertaining the extent of such damage.   The temporary repairs put on at Belize, were put on for the purpose only of enabling her to come to the port of New York.

The action was tried before one of the justices of this court, and a jury.

The plaintiffs having rested their case, the defendants offered no evidence, and moved for a dismissal of the complaint on the ground that it appeared by the evidence that the plaintiffs' liability under the policy had been satisfied. The court denied the motion, and the defendants' counsel excepted to the decision.

The court directed a verdict for the plaintiffs for the total amount claimed by them, viz. the sum of $3282.23.   To this direction, ruling and decision the counsel for the defendants excepted.   The jury thereupon found a verdict for the plaintiffs for the amount so directed.   The court then ordered the exceptions taken at the trial to be heard in the first instance

at the general term, and judgment on the verdict to be in the mean time suspended.

*H. P. Fessenden*, for the defendants.    I. The instructions to the master did not justify him in expending a sum so excessive, in temporary repairs.    The vessel was valued at $10,000, and was already subject to a lien of $581.18, for general average.    For the mere purpose of getting her to a place where she might be fully repaired (at a cost of $4547.21,) he expended the utterly unreasonable amount of $8767.74. It is true that by the terms of the letter he was authorized to do, in making the vessel perfectly safe to come to New York, whatever he and Mr. Mathe should decide.    But an authority unlimited in terms is still limited, necessarily, by the nature of the subject and the circumstances of the case. An unlimited authority to buy a coat for a private citizen would not justify the agent, under ordinary circumstances, in giving a thousand pounds for one.    Still less would an order to buy a stock which was at par, warrant the agent in paying a premium for it.    The discretion, though it be unrestricted by any words, must still be exercised with some show of reason.    To expend nearly $8800 for the purpose of getting a vessel worth only $10,000, and already charged with a lien of about $600, to a place where it would cost upwards of $4500 more to repair her, cannot be justified under the circumstances of the present case.    (*Vide Stewart* v. *Steele, 5 Scott, N. R.* 927 ; *and opinion of Maule, J. at p.* 948.)

The master ought not, under the circumstances, to have expended more, for temporary repairs, than with the general average and a reasonable estimate of the full repairs would equal the value of the vessel.    The general average and temporary repairs amount to $9350.92 ; leaving $650 only for the full repairs.

II. Whether, however, the authority given to the master and Mathe is to be considered subject to the limitation insisted on by the first point, or not, the defendants are not,

merely by their approval of the plaintiffs' instructions, made liable for more than the amount of their subscription to the policy. Their assent to the instructions had no effect to enlarge the amount insured by the policy. The master was not, nor were he and Mathe jointly, made agents of the defendants by such assent. The most that can be claimed for the effect of the approval is that it waived all objections to the expenditure *within the limits of the defendants' liability;* or what, for the purposes of this cause is the same thing, within any proper limits of expenditure for temporary repairs under the circumstances. It did not of its own force transform the policy into one for the total amount of the repairs, let them be what they might.

III. The question in the cause then is not what effect is to be given to the master's acts under the special authority given him, but what are the limits of the underwriters' liability on an ordinary marine policy on vessel, under the circumstances of this case. For the purposes of this inquiry there is no difference between an insurance for a specified voyage, and one for a given period of time. 1. The meaning of the contract itself, if the question were to be considered as a new one, is obvious enough. The defendants, says the complaint, became insurers to the plaintiffs of the sum of $8000, upon the brig Antonio Mathe, valued at $10,000, against the perils of the seas ; and further agreed to pay, in case of loss or misfortune, a proportionate share of such charges as might be incurred by the plaintiffs in the defense, safeguard and recovery of the property. The phraseology of the usual vessel policy, and of the actual policy in this case, is to the same effect; that by the defendants the plaintiffs have insured, upon a certain vessel, (which is to be estimated of the value of $10,000,) against the perils of the seas, &c. the sum of $8000 ; and that in case of misfortune, the plaintiffs shall do the best they can for the property, and the defendants will contribute to the expense of so doing in the proportion the said sum of $8000 shall bear to the whole

amount insured.   There is here none of the obscurity often
charged on policies of insurance ; which it is true rather be-
longs to the doctrines saddled on the policy than to the
instrument itself. (*See* 2 *Phill. Ins. sub.* 1743.)   The mean-
ing is plain.   The insurer agrees to pay.   (*a.*)  Loss or losses
to the extent altogether of $8000 : and   (*b.*) Expenses for
the protection or recovery of the property to any amount ex-
pended in good faith and with reasonable discretion.   In
other words, the sum insured is the limit of the defendants'
liability, with the single exception of such amount as they
may be bound to pay under their agreement to contribute to
the charges of protecting or recovering the insured subject.
2. Now, amidst all manner of glosses, comments, construc-
tions, *dicta,* &c. it has been adjudged and settled that the
insured may recover an amount exceeding the sum insured,
whenever, *besides a total loss,* he has suffered in addition
what is called, (*a.*) A general average loss.   (*b.*) One or more
partial losses, when the same have been repaired.   (*c.*) Sal-
vage expenses.   (*d.*) Expenses of contesting or appealing or
ransoming from capture.   But there is *no decision to be
found* that for one, or for any number of these losses or ex-
penses, *not including a total loss,* the insured are liable for
more than the sum insured.   The decisions are all reconciled,
and placed upon an intelligible and consistent basis, by adopt-
ing the principle above stated ; that is, by referring all losses
other than total losses, and unrepaired partial losses, to the
head of expenses incurred for the protection or recovery of
the insured property.   I do not mean that all the sayings, or
even all the arguings, of all the authorities will be reconciled ;
but the judgments will ; and with that one must be content.
*Vide,* in the order in which cited, *Lawrence* v. *Van Horne,*
1 *Caines,* 284; *Schmidt* v. *United Ins. Co.,* 1 *John.* 266,
*per Kent, Ch. J. at close of opinion ; Watson* v. *Mar. Ins.
Co.,* 7 *id.* 57 ; *Jumel* v. *Mar. Ins. Co., Id.* 424 ; *Barker* v.
*Phœnix Ins. Co.,* 8 *id.* 307, *and per Kent, Ch. J.* 245, § 2.
This is the first case in which a general average loss is added

to a total loss ; and it is put upon the ground of being expenses, and *Jumel* v. *Mar. Ins. Co.* is cited as authority ; *which it is not, unless a general average is an expense. Saltus* v. *Comm. Ins. Co.,* (10 *John.* 487, 490.) This was a recovery for partial loss (repaired,) general average, and total loss. The partial loss repairs were allowed as expenses. And to the point that the insured cannot recover for an *unrepaired* partial loss, besides a total loss, see *Livie* v. *Janson,* (12 *East,* 648,) and *Rice* v. *Homer,* (12 *Mass.* 234, 235 ; *Knight* v. *Faith,* 15 *Q. B. Rep.* 649.) See also, in general, 3 *Kent's Com.* 340, and *note e* ; 2 *Arnould Ins.* 1193 *to* 1198 ; *Stewart* v. *Steele,* (5 *Scott, N. R.* 948.)

These cases are fair representatives of the great body of cases in which a recovery has been had upon a policy of insurance to a greater amount than the sum underwritten by the defendants. Their correctness is no where questioned in any particular material to the present inquiry. Nor is there any case on record in which, except for expenses incurred under the second clause of the policy, the insured has recovered any thing over and above the sum specified in the policy. No decision, no writer of authority, so much as intimates that for any loss, or aggregate of losses occasioned by one disaster, more can be recovered *as for loss* than the sum insured. And it may also be said, by the way, and in anticipation, that there is no authority that more than a like amount can be recovered as for expenses consequent on any one disaster.

VI. The conclusion seems to follow, that if to recover the additional amounts, they must be recovered as expenses under the second clause, *they cannot be losses under the first.* It is true there are expressions in some of the cases to the effect that they may be recovered either as losses or expenses ; but these *dicta* are not necessary to the judgments, and are certainly contrary to the analogy, symmetry, coherency of the law. It is absolutely impossible to reconcile all the expressions, or even all the reasonings, of the cases with the decisions, or

with each other. They speak of losses, when they mean expenses ; of general average losses when they mean merely expenses which other persons are bound to share, and so on. The only way to arrive at a consistent doctrine is, to confine oneself to what is necessarily implied from the judgments. And I repeat that there is no adjudged case to be found in which the insured has, under the first clause of the policy, recovered as for a loss, or losses, consequent upon one disaster, more than the sum insured.

V. Considering all the items of the plaintiffs' claim to be expenses, resulting from one disaster, they cannot be allowed to a greater amount than eight-tenths of the valuation of the ship; that is, the $8000 insured. For the same simple reason alluded to in the first point with reference to the authority given to the master, that expenses for the protection and recovery of any subject can never, in good faith and sound discretion, exceed the value of the subject. It can never be justifiable to spend *for another party* a thousand dollars to save five hundred.

VI. If, however, the court shall consider the items of the plaintiffs' claim not to be all of the nature of expenses, as distinguished from losses, I then observe, there is no total loss in this case. The vessel remained, a navigable vessel ; neither was the plaintiffs' title to her divested in consequence of the disaster. The aggregation of expenses, or partial losses, if you please, to an amount greater than the valuation does not make a total loss. (2 *Arnould,* 1000, § 365. *Id. p.* 999.) The verdict, therefore, cannot be supported by considering the two sets of repairs as, together, a total loss, and the general average as expenses. And, as above observed, there is no precedent for a recovery of more than the sum insured, unless one of the items be a total loss. No aggregation of partial losses, resulting from one disaster, was ever recovered for to an amount greater than the sum insured.

VII. The two sets of repairs must be taken together. The temporary repairs are but incident, and preparatory to the

full repairs. (*Brooks* v. *Oriental Ins. Co.*, 7 *Pick.* 259, 268. *Am. Ins. Co.* v. *Center*, 4 *Wend.* 45, 51.)

VIII. If the repairs are, indeed, to be considered the loss, and not expenses, then the recovery for them ought to be limited to the sum insured. That having been paid, the verdict ought to be reduced to the amount of the general average.

XI. The verdict should be set aside, and a new trial ordered; or, at least, the plaintiffs should be required to reduce it to the amount of the general average.

*James C. Carter*, for the plaintiff. I. There was no dispute at the trial upon the facts; the necessity of taking the brig into Belize, discharging the cargo and examining her bottom, was conceded; that the expense attending this was the proper subject of general average, could not be denied, and was not questioned, nor was any question made as to the accuracy of the adjustment of the general average by which the brig's share of the common burden was ascertained to be $518.18. The apparent wisdom, judging before the event, of transhipping the cargo and effecting temporary repairs at Belize, with the view of making the permanent repairs in New York, was conceded; the whole matter was laid before the underwriters, and they fully assented to the course pursued, nay, more, requested it; no question was made as to the perfect good faith throughout of the master and owners of the brig, nor was it claimed that the temporary repairs could, in fact, have been effected at a less expense; all parties were disappointed at the high figure which they reached.

II. The single point made by the defendants was, "that it appeared by the evidence that the defendants' liability under the policy had been satisfied." The case, therefore, distinctly concedes that if, under the circumstances proved, the defendants could be made liable in any sum exceeding the amount of their subscription, they were liable in the full amount claimed.

III. The argument is thus brought within a narrow compass, and is made to turn upon the question whether, in any case, there can be a recovery against an underwriter, on a marine risk of a sum exceeding the amount of the subscription; the law on this point is well settled. The notion that the amount of the claim must be limited to the amount of the subscription is a total misapprehension, and cannot be supported by the authority of any judicial decision, or the opinion of any writer of authority; the contrary decision has followed whenever the question has been made. (*Livie* v. *Jansen*, 12 *East.* 648, *per Lord Ellenborough, p.* 655. *Le Chemmant* v. *Pearson*, 4 *Taunt.* 367. *Peele* v. *The Merchants' Ins. Co.*, 3 *Mason*, 27. *McBride* v. *The Marine Ins. Co.*, 7 *John.* 431. *Jumel* v. *The Marine Inssur. Co.*, *Id.* 412. *Barker* v. *The Phœnix Ins. Co.*, 8 *id.* 307. *Phillips on Insurance, vol.* 2, § 1267. *Arnould on Insurance, vol.* 2, *p.* 847, *n* 878. *Benecke & Stevens on Average, Phillips Ed.* 74. *Hopkins on Average*, 301, *et. seq.*) The rule established by the above authorities is, in some of them, based upon the clause in the policy making it the duty of the assured to sue, labor and travel in and about the defense, safeguard and recovery of the property, and imposing upon the underwriter the obligation to contribute to the expense thus incurred. In others, the nature of the contract itself is supposed to furnish the foundation of the rule, and this is probably the better opinion. (*Livie* v. *Jansen, ubi supra. Le Chemmant* v. *Pearson, ubi supra. Arnould on Insurance, vol.* 2, *p.* 847, *n.*)

IV. The equity of the doctrine declared in the authorities above cited, were it necessary to vindicate any thing so well established, will appear very plainly upon a consideration of the nature of a maritime adventure, and the connection of the underwriter with it. 1. The underwriter on a particular subject, either vessel, cargo or freight, to the extent of his subscription, stands in the place of the owner and becomes one of the concerned. If his insurance be to the full value of the subject, he becomes as to that the only one concerned.

2. Suppose the ship become stranded by a peril of the sea, and in order to prevent a total loss of ship and cargo it becomes necessary to pay a large sum to salvors to get her off. Slight repairs may thus become necessary, making it requisite to go into an intermediate port and discharge the cargo. The expenses thus incurred are for the common benefit of all having an interest in the adventure, and the burden of them, is by the law of general average distributed among all. Very slight damage may have been done to the ship and none to the cargo, and yet the expenses thus incurred may have amounted to half the sum insured. Should a total loss occur at a subsequent period of the voyage, it would be a most inconvenient, not to say unjust, rule which should allow the underwriter to deduct from the amount of the total loss, payable by him, such a sum as he was obliged to pay by reason of the prior general average. 3. Had he been on the spot in the moment of peril, of course he would gladly have agreed to bear his proportion of the necessary expense and leave his subscription afterwards standing for the original amount ; the expense was incurred as much for his benefit as for the benefit of others, and in equity it belongs to him to pay the price of his own safety ; the sum which he is thus required to pay is not so much something which is due *for a loss* of a portion of the subject insured, but is an expense *extraneous* to the insurance incurred for the purpose of preventing a loss. 4. If such expenses as these were to be considered as, in effect, reducing the amount of the subscription for the residue of the voyage, how could the merchant or ship owner keep himself insured ? He cannot foresee such exigencies at the commencement of the voyage, and, in general, he receives no information of them until long after their occurrence. Such a rule would furnish a most specious pretext for over insurance. 5. What is true of the example above made use of is true of *all cases* where expenses are incurred in the nature of general average ; expenses of that character are always incurred *in order to prevent* a more grievous loss, and must

be paid by the parties concerned, at all events, even if nothing
is finally saved. The occurrence of a subsequent loss, whether
partial or total, does not affect the obligation, nor is the
liability to pay the full amount of a subsequent loss, whether
partial or total, affected by the prior average loss. 6. The
case is different where the general average has arisen from a '
*jettison* of any part of the ship or cargo ; in such case there
is to be contribution only from such property as is eventually
saved ; if ship and cargo are subsequently lost by a distinct
peril and *nothing is saved,* there is no contribution. This is
the difference between a *sacrifice of a part of the thing* and
an *extraneous expense incurred.* (*Phillips on Insurance,
vol.* 2, § 1355 *et seq.*) 7. Inasmuch as an average contribu-
tion for a *jettison never takes place unless something has
been saved,* and is only a *part* of what is saved, it follows
that such a contribution, when added ·to a subsequent loss,
can never swell the claim to a sum exceeding the amount of
the subscription. But an average contribution arising out
of *extraneous expenses incurred,* inasmuch as it must be
paid, whether any thing is finally saved or not, *may,* when
added to a subsequent total, or even partial loss, exceed the
amount of the subscription. (*Phillips on Insurance, vol.* 2,
§ 1268.) 8. Another case in which the underwriters may be
required to pay a sum exceeding the amount of the subscrip-
tion is in the case of *successive particular averages on the
ship where the prior damage has been repaired before the
subsequent damage is received.* In such a case, after the
reparation of the prior damage, the insurable interest at the
risk of the underwriter remains the same. (*Phillips on In-
surance,* § 1266 *et seq. Hopkins on Average,* 301 *et seq.*)
9. Another instance is where there has been a total loss
and an abandonment, and expenses have been incurred by the
assured or the master in respect to the salvage which exceed
the value of the salvage ; the underwriter is bound to pay
all such expenses, if they have been incurred in ·good faith.
This obligation may very well be based upon the clause in

the policy permitting and requiring the assured to sue, labor and travail, in case of loss or misfortune, in and about the defense, safeguard and recovery of the property ; but it would probably still be held to exist, in the absence of such a provision, on the general pinciples of insurance.

V. As we have heretofore shown, this case comes before the court upon the concession that the full amount of the plaintiff's claim must be paid unless there is, in actions against underwriters, a rigorous limitation of the amount of the recovery to the amount of the subscription ; but, were it an open question, whether the particular claims made by the plaintiffs were all, *in their nature,* recoverable against the defendants, the affirmative could safely be sustained. 1. How little question there is upon this part of the case, in the opinion of the defendants, is evidenced by the fact that they have paid parts of the very claims, the whole of which they refuse to pay, and do not suggest any ground of discrimination between such parts. 2. As to the particular average of $4547.21, it will not be pretended by the defendants that they are not bound to pay that in full ; this was the amount of the damage sustained by the brig from a plain sea peril. 3. As to the vessel's proportion of the *general averaye,* amounting to $581.18, there is no denial on the part of the defendants that the expenses of which it is made up were in the nature of general average, nor any allegation of error in the adjustment ; the expenses were incurred in getting the brig into Belize, unloading her cargo and ascertaining the extent of the damage. All such expenses are everywhere conceded to belong to general average ; all these expenses must necessarily be incurred before it can be determined whether it is wise or not to endeavor to refit, and complete the voyage ; they were incurred in the present case for the common benefit, and before any separation of the interests by a transhipment of the cargo was contemplated. (*Phillips on Ins. vol.* 2, § 1326.) 4. The only remaining question is as to the sum of $8769.74 for the temporary repairs ; it fol-

lows from what has been said that the insurers are liable for all or none of this amount ; they have confessed their liability for the amount by a payment of a part of the sum, and the only objection made to the payment of the residue is that it exceeds the amount of their subscription ; this point has been disposed of. 5. But there is no necessity for relying upon this confession of the defendants ; the merits are clear. This item was an expenditure well established as belonging to *general average* ; and therefore stands upon precisely the same footing as the other claim for general average. It is true that there could not be a formal average, embracing all the interests ; for the cargo had been separated and sent forward. But this does not change the *nature* of the expenditure ; it shows only that the expenditure was solely for the benefit of the vessel, and to be borne by the underwriters on the vessel. 6. The separation of the cargo is not a circumstance of which the defendants can take any advantage. It was necessary that the cargo should be separated. Temporary repairs would not have sufficed to enable the vessel to carry the cargo. The defendants were apprised of the necessity of this separation, and assented to it. 7. The defendants would have been liable for the expense of the temporary repairs, even if they had never assented to them, on the general principles of insurance, but their complete assent, amounting in fact to a special request, removes the whole matter from the region of argument. 8. The case upon this last item, shortly stated, is this : The brig met with disaster and was compelled to put back. Her injuries were found to be so great that, considering the expensiveness of the port, she could not be repaired so as to able to carry in the cargo, except at an expense which could not be justified. The cargo was therefore transhipped and sent forward. The question remained, what to do with the brig. The insurers were liable for the damage already done. That damage could not be fully repaired in the port of refuge, except at an expense which would exceed her value when repaired.

Alexandre *v.* Sun Mutual Insurance Company.

The insurers could have been fastened with a total loss. *It was thought*, however, after full consideration, that temporary repairs could be made at a moderate expense, and the vessel thus brought to New York, where full repairs could be made and a total loss thus avoided. This view was presented to the defendants and they acquiesced in it, and requested it to be done. The thing was undertaken at their request and for their benefit, and would not otherwise have been done. Will it be pretended that they can escape the obligation to pay for these repairs in proportion to their interest? 9. Can there be any doubt, even, that an action would lie against them, wholly independent of the policy, to recover their proportion of this expenditure, as money paid at their request and for their benefit? This ground of liability is asserted by a special allegation in the complaint. 10. The event greatly disappointed the expectations of all parties, but there has been no breach of good faith on the part of the plaintiffs or their agents. The repudiation by the defendants of their obligation to repay moneys advanced at their request and for their benefit, finds a poor apology in the fact that they happened to be the heaviest sufferers in a common misfortune.

*Fessenden* in reply. The lines of divergence between the plaintiff's argument and ours are not many.

I. They say we admitted, by paying them the amount of our subscription, that all the items of their claim were proper subjects of recovery; and that when we claim that the amount they can recover is limited to the subscription, we are overruled by the cases in which more than the subscription was recovered; so that between our admission as to one factor, one constituent element of their claim, and the adjudications as to the other, we are concluded. The fallacy of this argument is that the present case is not like that upon which the decisions in question were rendered. We do admit all the items of their claim to be proper subjects for recov-

ery to some amount, and to the amount although of $8000 ; but the question is, whether to any, and if any what, further amount. The decisions say there are cases in which more than the amount of the subscription may be recovered. But they don't say so in any case like the present.

II. The plaintiffs argue to a considerable extent from cases in which there were *successive disasters*. In the case at bar there was but one disaster. It may well be, especially in the case of a time policy, that the insurer's contract is a continuing guaranty, applicable in full force, and to the full amount, to successive disasters ; and yet that the insurer is liable on account of any one injury for no more than his subscription. We relied on this distinctly, in our opening ; and we assert again that the authorities will be ransacked in vain for a precedent for the recovery of more than the insured sum on account of any loss or aggregation of losses, or of losses and expenses, occasioned by any one injury.

III. The plaintiffs consider the full repairs at New York the true loss, and the temporary repairs at Belize an expense "in the nature," their counsel says, "of general average." General average between what parties ? General average implies a contribution. Who were to contribute ? The general average expenses of getting the brig back to Belize, unloading, surveying, &c. had all been incurred. The cargo had gone on by another vessel. No parties remained interested but the insured and the insurer. Did any one ever hear of a general average contribution between them ? The insurer generally has to pay the whole ; as he has done in this case.

But waiving that matter, is it competent for the assured to separate the temporary from the full repairs, and make one an expense to be recovered under the expense clause, the other a true loss, to be recovered under the first clause of the policy ? Is it not plain that in a case like this, between only two parties, insured owner on one side and insurer on the other, the temporary repairs are mere preparation for

the full repairs ? The expense of stripping the vessel, preparatory to taking her upon the dry dock here in New York, might as well be separated from the rest of the full repairs ; or the expense of fixing her pumps and pumping her out dry, before taking her up on the dock here. We have cited on our printed points two cases which hold distinctly with us on this point.

There are cases in which the *extra* expense of a more costly port, or of repairs which were of no permanent use, has been *separated* from other expenses, and considered general average ; just as in this case the expense of getting back to Belize and unloading, surveying, &c. there were considered general average. This separation has not been made in this case. The insured has let the cargo and freight go, and, instead of claiming of us the *vessel's share* of these extra expenses, they claim the whole. It is too late for them to call any part of the temporary repairs general average. Their adjustment and claim treat them as repairs, and their complaint and their case on the trial treat them as repairs, to be settled between themselves and us, not at all between vessel, cargo and freight. Besides, there is really no evidence that the repairs at Belize were of no permanent benefit. They were temporary repairs, put on there only for the purpose of getting the vessel to New York ; but it does not follow that no part of them was useful afterwards. It is very unlikely that no use was made of them.

IV. The plaintiffs call these repairs, or at least the full repairs, a loss, under the first clause of the policy, and not an expense. Suppose—what might well have happened, for this was an insurance for a whole year from July, 1863, and the disaster happened in September of that year—suppose that after this vessel was fully repaired at New York, she had immediately gone to sea and foundered in a gale before July, 1864. Then the plaintiffs would have called for their total loss, and doubtless they would have wanted to be paid for their full repairs in New York also. Their counsel would

not then have called those repairs a *loss*. He would have looked at the cases he has cited, and would have carefully distinguished them as an *expense* incurred in the reparation of the insured subject ; incurred, as said in the case cited from 10*th Johnson*, for the benefit of the insurer. The first clause in his policy being already used up in paying his total loss, he would never, in such a case, have thought of recovering his previous repairs also under that clause. With what propriety then can it be attempted now to recover those repairs under that clause ?

V. The plaintiffs and ourselves have in general cited the same decisions. It is natural that we should differ in our construction of them. In such a case it is the most natural course, one obviously proper, to refer to the text writers of authority ; persons of learning and discrimination, who have made it their business to understand the whole subject, and from a view of the whole form an impartial judgment of the true doctrine. All, as we read, put the same construction with us on the contract and law of insurance. All the continental writers are with us, and the chief of them, Emerigon, goes further, and thinks that the underwriter ought in no case to pay more than he has received premium for. In England Mr. Arnould, in this country Chancellor Kent and Mr. Phillips, all agree that only under the expense clause can the insurer be liable for more. (2 *Phillips' Ins. subds.* 1267, 1743. *Livie* v. *Jansen,* 12 *East,* 648. *Rice* v. *Homer,* 12 *Mass. R.* 234. *Knight* v. *Faith,* 15 *Q. B. Rep.* 649.) But while there is, as stated in the opening points, absolutely no precedent for the recovery of more than the sum insured, unless one of the items in the claim is a total loss, nevertheless we agreee that we may be liable for proper *losses* to the full extent of our subscription, and under the same policy for proper *expenses* to another like amount. What we insist upon is, (*a.*) That under the expense clause, we are not liable for more than is expended in good faith and with reasonable discretion. (*b.*) That it can never be reasonable to

expend more than the whole agreed value of the insured subject. (*c.*) That the items of the plaintiffs' claim are all properly expenses, and not losses ; and were satisfied by our payment of $8000, with interest and costs. (*d.*) That if the repairs are losses, the temporary and the full are to be taken together as one loss. (*e.*) That in that case the plaintiffs can recover for both of them but the $8000 ; and the verdict ought to stand for the general average only.

*By the Court,* LEONARD, P. J. The action is upon a policy of marine insurance for the sum of $8000, upon eight tenths of a brig valued at $10,000. The brig sustained an injury from the perils of the sea, while upon the voyage insured, and, after incurring considerable expense, was brought into Belize, a foreign port from which the brig had then recently departed with a cargo bound to New York. Upon the adjustment of general average for the expenses incurred in bringing the brig and cargo to Belize, the share of the brig was found to be $518.18.

The brig was very seriously injured, and it appears that repairs could be made at Belize only at an enormous expenditure, and the master by letter to the plaintiffs, stated these facts, and recommended temporary repairs, and that the brig should be navigated to New York, where permanent repairs could be made at much less cost. This information was communicated to the defendants, who authorized the plaintiffs to give the master instructions in the premises. The plaintiffs wrote to the master, instructing him to advise with Mr. Mathe at Belize, in making repairs, adding that whatever they did would be approved. The letter was shown to the defendants who, in writing, concurred in it. The repairs, considered to be of a temporary character, were made at Belize, involving an expenditure of $8769.74, and after the arrival of the brig at New York, full repairs were made at a further expenditure of $4547.21, after making the usual deduction of one third, new ·for old. The defend-

ants paid the whole amount of their policy, ($8000,) to the plaintiffs, with interest and costs, and insisted that they had satisfied the whole extent of their liability. The plaintiffs insist upon recovering not only the sum insured by the policy, but also the balance of their expenditures for general average and temporary and permanent repairs, exceeding the sum paid by the defendants, by the further amount of $3282.23 ; for which sum the judge at the trial directed a verdict to be entered for the plaintiffs. The defendants excepted to the ruling of the judge, and the exceptions were directed to be heard at the general term in the first instance.

The right to recover for the expenses incurred by the assured in defending, saving and recovering property insured, in addition to the sum named in the policy, has been sustained, and is laid down as authority by the elementary writers, and in the series of English and American cases referred to by the learned counsel who ably argued the questions now before the court. Under these decisions, the proportion of the expenses borne by the brig under the adjustment of the general average, should, I think, be allowed to the plaintiffs. These expenses were incurred in bringing the vessel into a port of safety, and are covered by the terms of the policy which require the assured to sue, labor and travel in and about the defense, safeguard and recovery of the subject insured. The further expenses paid for temporary repairs at Belize were incurred in the expectation, probably entertained by both parties, that such repairs, together with the subsequent full repairs to be made at the home port, would amount to less than the sum named in the policy. They are not expenses incurred, as it seems to me very plainly, like the items included in the general average, in or about the defense, safeguard or recovery of the brig. When the vessel reached a port of safety, the general object of the contract, requiring the assured to sue, labor and travel for the benefit of the thing insured, had been accomplished. The temporary repairs were made from economical motives. Had full

repairs been made at Belize, they must have exceeded very much the sum named in the policy. But in such case the recovery for repairs would have clearly, like the case of a total loss, been limited by the sum named in the policy. Again, it may be safely remarked, that there would have been no claim under the policy for the expense of the temporary repairs made at Belize, had the master or owners made them without the request or concurrence of the defendants. The defendants, however, did authorize the temporary repairs, and thereby, beyond dispute, made themselves liable therefor to the extent of the policy, at least, as part of the necessary cost of full repairs. The question, then, remaining is, whether the course pursued in this respect made the defendants liable for the whole amount of the temporary repairs, as well as the full repairs, although the amount in the aggregate exceeds the sum named in the policy, and for such excess no premium has been received by the defendants. It may be safely assumed that the plaintiffs would not have given, nor would the defendants have authorized, the temporary repairs, could they have known the result. The amount of the outlay must have been wholly unexpected to all parties. There is no ground for doubting that the expenditures were made by the master and Mr. Mathe in entire good faith.

In considering this subject, I observe that the contract is one of indemnity. The plaintiffs could gain nothing by having the repairs made at New York, as I understand the facts. We have no evidence of the actual value of the vessel ; but for the purposes of the policy it was fixed at $10,000, and of course $8000 covered the whole interest insured, as to value. I assume that upon a survey and estimate of the expense for fully repairing at Belize, the plaintiffs might have abandoned, as for a total loss, and recovered from the defendants the sum insured, as well as the proportion of the general average borne by the brig. The defendants were the parties to be benefited in case a saving ensued

from making temporary repairs, and bringing the brig to New York for full repairs. The plaintiffs took no hazard. They applied to the defendants for directions, and obtained them. Had the defendants refused to authorize the temporary repairs, it appears improbable that the plaintiffs would have ordered them. The plaintiffs departed from their strict legal course only upon the authorization of the defendants.

These reasons lead me to the conclusion that the repairs were made at Belize for the sole benefit of the defendants ; and that, having authorized them, and thereby induced the plaintiffs to take the course suggested by the master, they must bear the whole expense of the temporary, as well as the subsequent repairs made at New York.

Judgment should be entered for the plaintiffs' upon the verdict, with costs.

[NEW YORK GENERAL TERM, June 3, 1867. *Leonard, Clerke* and *Geo. G Barnard,* Justices.]